**Michelle GEORGE, Ronda Allen, Guillermina Lopez-Mendez, Mary Oates and Hortense Williams, on behalf of themselves and all others similarly situated, Plaintiffs,**

v.

**Henry PARRY, Individually and in his capacity as Commissioner of the Orange County Department of Social Services, David Ritter, Individually and in his capacity as Orange County District Attorney, Anne Molloy, Beverly Connell, Madeline Smith and Robert Remer, Defendants.**

No. 76 Civ. 1161 (LFM).

United States District Court, S. D. New York.

Jan. 5, 1978.

Mid-Hudson Legal Services, Inc., Newburgh, N.Y., for plaintiffs by Laura Zeisel, Joseph Lawrence and Bryan D. Hetherington, Kingston, N.Y.

Peter G. Striphas, County Atty. of Orange County, Goshen, N.Y., for defendants by Roger F. Kujawski, Asst. County Atty., Goshen, N.Y.

## OPINION

MacMAHON, District Judge.

Defendants move to be relieved from a stipulation of settlement executed by counsel in this class action. Plaintiffs cross-move for approval of the settlement, pursuant to Rule 23(e), Fed.R.Civ.P.

This action was instituted by five named plaintiffs, each of whom is a past or present recipient in Orange County, New York, of Aid to Families with Dependent Children or of Home Relief. The amended complaint sought a declaratory judgment, injunctive relief and compensatory and punitive damages for alleged violations of 42 U.S.C. §§ 1983, 1985 and 1986 by certain officers and employees of the Orange County Department of Social Services (the "Department") and of Orange County.

The gravamen of the amended complaint was that defendants were exerting improper pressure on welfare recipients in an effort to recoup allegedly unauthorized aid payments. Plaintiffs claimed that defendants' demands for repayment were accompanied by implicit and explicit threats of criminal prosecution, even when defendants lacked probable cause to believe that the recipient had committed a crime. They also claimed that defendants, without *Miranda*-type warnings, subjected suspected recipients to "interrogations" designed to coerce them into confessing criminal liability and promising to repay all unauthorized payments. The total effect of these tactics, plaintiffs alleged, was to coerce unfounded admissions of criminal liability from welfare recipients, to force repayment of money from recipients immune from civil judgment, and to instill fear of imminent arrest for welfare fraud.

We certified the suit as a class action on September 28, 1976. In February 1977, after a pretrial conference with Magistrate

Sol Schreiber, counsel began settlement negotiations. The negotiations continued for some two months and were marked by repeated disagreements. The disagreements were apparently resolved at a pretrial conference before Magistrate Schreiber on April 14, 1977, and a stipulation of settlement was executed by counsel on April 22. We subsequently approved a notice of settlement, which was printed in both English and Spanish and mailed to the class members.

Defendants now object to the stipulation, arguing that it imposes obligations on them contrary to those imposed by "prevalent case law in the State of New York."[1] They admit that they were aware of the nature of the stipulation throughout the negotiations but allege that their counsel failed fully to explain its provisions. They further allege that they agreed to the stipulation's execution only because they did not "fully comprehend . . . all of (its) ramifications. . . ."

These allegations are insufficient to support defendants' requested relief. The settlement stipulation is an executory accord, *Hall v. People to People Health Foundation, Inc.,* 493 F.2d 311 (2d Cir. 1974), and, if valid, is binding on the parties until our Rule 23(e) decision. See *Tate v. Werner,* 68 F.R.D. 513 (E.D.Pa.1975). Defendants do not allege that the stipulation was obtained by fraud, duress or other illegal means, see *First Nat'l Bank of Cincinnati v. Pepper,* 454 F.2d 626 (2d Cir. 1972), or that their counsel was not authorized to settle. Cf. *Gilbert v. United States,* 479 F.2d 1267 (2d Cir. 1973); *Thomsen v. Terrace Nav. Corp.,* 490 F.2d 88 (2d Cir. 1974); *Autera v. Robinson,* 136 U.S.App.D.C. 216, 419 F.2d 1197 (1969). Rather, their only argument is that their failure to comprehend the "ramifica-

---

1. Defendants' cited cases do not support this contention. *People v. Rosen,* 89 Misc.2d 51, 390 N.Y.S.2d 578 (Sup.Ct.1977), held only that *Miranda* warnings are not required in welfare interviews; it does not preclude an agency's consent to give such warnings. *Perez v. Dumpson,* 88 Misc.2d 506, 389 N.Y.S.2d 279 (Sup.Ct.1976), *mod. and aff'd,* 58 A.D.2d 887,

396 N.Y.S.2d 883 (1977), is similarly unpersuasive. The settlement here does not foreclose any of the Department's powers. All avenues of recoupment and the like remain open. Defendants have agreed only to institute further safeguards to protect against possible abuses. And see 18 NYCRR §§ 352.7, 352.31, and 358.1–358.28.

tions" of the stipulation precluded their effective consent to it.

 Defendants, however, had ample time to study the proposed stipulation before its execution. They cannot rely, therefore, on their alleged failure to comprehend the significance of the disclosed facts to avoid the settlement. *General Discount Corp. v. Schram,* 47 F.Supp. 845 (E.D.Mich. 1942); *Daly v. Busk Tunnel Ry.,* 129 F. 513 (8th Cir. 1904). See *Robinson v. E. P. Dutton & Co.,* 45 F.R.D. 360 (S.D.N.Y.1968). Moreover, inasmuch as that failure allegedly resulted from their counsel's omissions, defendants are precluded from relief. *Hall v. People to People Health Foundation, Inc., supra; Davis v. United Fruit Co.,* 402 F.2d 328 (2d Cir. 1968), *cert. denied,* 393 U.S. 1085, 89 S.Ct. 869, 21 L.Ed.2d 777 (1969).

Accordingly, we hold that defendants are bound by their voluntarily executed settlement agreement, and turn to plaintiffs' motion for approval of the settlement, pursuant to Rule 23(e).

 In considering a settlement under Rule 23(e), we act " 'as a fiduciary who must serve as a guardian of the rights of absent class members.' " *City of Detroit v. Grinnell Corp.,* 560 F.2d 1093 (2d Cir. 1977). Consequently, before approving the settlement, we must be convinced that (1) it was not collusive but was made after negotiations at arm's length; (2) counsel are experienced in similar cases; (3) sufficient discovery has occurred to enable counsel to act intelligently; and (4) the number of objectants is small.[2] *Feder v. Harrington,* 58 F.R.D. 171 (S.D.N.Y.1972).

The stipulation here is not a collusive agreement. Each side repeatedly challenged the other's proposals in the preceding negotiations, indicating conclusively that hard bargaining and adversary interests, rather than collusion, permeated the negotiations.

Nor is there any doubt as to the qualifications of counsel. Their integrity, expertise and professional skill are adequate. Moreover, there is not the slightest hint that counsel for either side would shy away from a trial if one were in the interests of his or her clients.

We are also convinced that sufficient discovery had been conducted to enable counsel to act intelligently in the settlement negotiations. Extensive interrogatories had been returned, numerous documents had been inspected, and the deposition of Anne Molloy, a defendant with critical knowledge of the workings of the Department, had been taken. The quality and quantity of the discovery conducted is sufficient to have enabled counsel to have made an informed decision as to the merits and terms of the settlement.

 Finally, to ensure that the interests of the class have not been jeopardized by the settlement, we must weigh the benefits accruing to them from the agreement against the benefits they could expect to receive from continued litigation. See *City of Detroit v. Grinnell Corp.,* 495 F.2d 448 (2d Cir. 1974); *Feder v. Harrington, supra.* Plaintiffs have obtained in the settlement essentially all of the procedural safeguards and policy changes they initially sought. Although they have recovered no damages through the settlement, such recovery might have been uncertain after a trial. See, *e. g., Smith v. Sampson,* 349 F.Supp. 268 (D.N.H.1972), and *Knuckles v. Prasse,* 435 F.2d 1255 (3d Cir. 1970), *cert. denied,* 403 U.S. 936, 91 S.Ct. 2262, 29 L.Ed.2d 717, *reh. denied,* 404 U.S. 877, 92 S.Ct. 33, 30 L.Ed.2d 125 (1971). Clearly, the settlement's failure to provide recovery of damages does not, in itself, prevent our approval. See, *e. g., Hill v. Art Rice Realty Co.,* 66 F.R.D. 449 (N.D.Ala.1974); *Sunrise Toyota, Ltd. v. Toyota Motor Co.,* 1973–1 Trade Cases ¶ 74,398 at 93,821 (S.D.N.Y.1973).

---

2. This criterion has clearly been met; only one class member has noted an objection. Moreover, no hearing on this objectant's views is necessary. He disputes the maintenance of this action, not the terms of the settlement. A

hearing, therefore, cannot affect our determination of the stipulation's merits. *City of Detroit v. Grinnell Corp.,* 356 F.Supp. 1380 (S.D.N.Y. 1972), *mod. in other respects,* 495 F.2d 448 (2d Cir. 1974).

We therefore conclude that the class has received benefits from this settlement at least commensurate with any it reasonably could have expected from a full trial. Certainly, the settlement as a whole is not so unfair on its face as to preclude judicial approval. *Glicken v. Bradford,* 35 F.R.D. 144 (S.D.N.Y.1964).

Accordingly, defendants' motion for relief from the stipulation is denied. Plaintiffs' cross-motion for approval of the settlement is granted.

Settle an order within twenty (20) days.